UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HANEEF MUHAMMAD,**

    **Plaintiff,**

    v.

**PNC FINANCIAL SERVICES[1],**

    **Defendant.**

:

:

:

**Case No. 2:24-cv-3934**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

### OPINION AND ORDER

This matter is before the Court on Defendant PNC's Motion to Dismiss (ECF No. 7). Also pending before the Court is Mr. Muhammad's Motion for Partial Summary Judgment (ECF No. 21).

For the reasons below, PNC's Motion to Dismiss is **GRANTED**. Mr. Muhammad's Motion for Partial Summary Judgment is **DENIED as moot**.

### I.  BACKGROUND

Mr. Muhammad had a bank account with PNC. (Compl., ECF No. 3.) On October 5, 2023, Mr. Muhammad attempted to report fraudulent checks he deposited into his account to a PNC branch manager. (*Id.* at PAGEID # 21.) The branch manager told him that she "felt sorry for" the person whose name was on the

---

[1] Defendant's Motion to Dismiss states that Defendant assumes Mr. Muhammad intended to name "PNC Bank, N.A." as the defendant here instead of "PNC Financial Services" because PNC Financial Services Group, Inc., is a holding company while PNC Bank, N.A. is the proper PNC corporate entity to this action. (Def.'s Mot., PAGEID # 29.) For ease of reference, the Court will refer to the Defendant as "PNC."

checks. (*Id.*) Mr. Muhammad asked the manager about his lost money and she replied that "there was nothing she could do for him." (*Id.* at PAGEID # 22.) Then, she "cut up his debit card." (*Id.*) Mr. Muhammad believes the manager refused to help him and closed his account because of his "appearance, race, or last name[,]" but his Complaint does not specify his race or describe his appearance. (*Id.*)

Mr. Muhammad sued PNC in state court, asserting claims of negligence, intentional infliction of emotional distress, and discrimination in violation of 42 U.S.C. § 2000a ("Title II") and 42 U.S.C. § 1981. PNC timely removed. (ECF No. 1.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must

2

include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Although a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, he still must do more than assert bare legal conclusions. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Indeed, his "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### III. ANALYSIS

#### A. The Court lacks subject matter jurisdiction over Mr. Muhammad's Title II claim.

A federal court is obliged to *sua sponte* examine jurisdictional issues, including the existence of subject matter jurisdiction. *Capron v. Van Noorden*, 6 U.S. 126, 127 (1804); *Clark v. United States*, 764 F.3d 653, 657 (6th Cir. 2014).

Before an action can be taken under Title II, where a state has a statutory analogue to the Civil Rights Act that authorizes a state organization to grant relief from the discriminatory practice, "no civil action may be brought under [the Civil Rights Act] before the expiration of thirty days after written notice of [the discrimination] has been given to the appropriate State or local authority[.]" 42

U.S.C. § 2000a–3(c). Put another way, "[p]laintiffs are required to first avail themselves of the state administrative remedies before proceeding in federal court." *Halton v. Great Clips, Inc.*, 94 F. Supp. 2d 856, 861 (N.D. Ohio 2000) (citing *Watson v. Fraternal Ord. of Eagles*, 915 F.2d 235, 242 (6th Cir. 1990)). In this Circuit, the requirement to notify the proper state or local authority, where one exists, is considered jurisdictional. *See id.* at 860–61 (citing *Watson*, 915 F.2d at 242); *Jackson v. Murray States Univ.*, 834 F. Supp. 2d 609, 615 (W.D. Ky. 2011).

Ohio has statutory provisions that prohibit discrimination in places of public accommodation and that authorize the Ohio Civil Rights Commission to grant or seek relief from this prohibited practice. *See* Ohio Rev. Code § 4112.02(G); Ohio Rev. Code § 4112.05. But Mr. Muhammad's Complaint does not allege that he filed a claim relating to this matter with the Ohio Civil Rights Commission, or any other state or local authority. Thus, the Court lacks jurisdiction to consider his claim. *See Watson*, 915 F.2d at 242; *Jackson*, 834 F. Supp. 2d at 615.

Mr. Muhammad's Title II claim is **DISMISSED**.

### B. Mr. Muhammad's Section 1981 claim fails.

To prevail on a Section 1981 claim, a plaintiff must establish: (1) that "he belongs to an identifiable class of persons who are subject to discrimination based on their race;" (2) that "the defendant intended to discriminate against him based on his race;" and (3) that "the defendant's discriminatory conduct abridged [a right enumerated in the statute]." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). To survive a motion to dismiss, a plaintiff must present sufficient factual content to allow the Court, informed by its "judicial experience and common sense,"

4

to "draw the reasonable inference" that the defendant intentionally interfered with or impaired the plaintiff's contractual right on the basis of race. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678–79).

In his Complaint, Mr. Muhammad alleges that PNC closed his account and refused to investigate his fraudulent checks "based off his … race." (Compl., PAGEID # 22.) But Mr. Muhammad's Complaint does not allege his race. Because his Complaint fails to allege sufficient factual content from which the Court could draw the reasonable inference that he was discriminated against based on his race, his Title II claim fails. *See Jones v. Goodyear Tire & Rubber Co.*, No. 99-4358, 2000 WL 1434628, at *2 (6th Cir. Sept. 22, 2000); *Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *7 (6th Cir. Jan. 26, 2022).

Mr. Muhammad's Section 1981 claim is **DISMISSED**.

### C. Mr. Muhammad's negligence claim fails.[2]

PNC moves to dismiss Mr. Muhammad's negligence claim because, among other reasons, it is barred by the economic loss doctrine. (Def.'s Mot, PAGEID # 36.) Mr. Muhammad does not respond to PNC's argument on this point.

---

[2] Mr. Muhammad's remaining claims—negligence and intentional infliction of emotional distress—are state-law claims and may be adjudicated only through supplemental jurisdiction. *See* 28 U.S.C. § 1367(a); 28 U.S.C. § 1441(c). Once a court has original jurisdiction over some claims in the action, it can exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Supplemental jurisdiction is a matter of judicial discretion. *Id.* at 726. The Court will exercise supplemental jurisdiction over Mr. Muhammad's state-law claims to promote judicial economy and because they also arise from his dispute with PNC.

"The Ohio Supreme Court has reasoned that purely economic loss should not be recoverable under tort where there is also a contract, because protection for economic losses should arise under the bargained-for contract." *Middleton v. Rogers Ltd., Inc.*, 804 F. Supp. 2d 632, 639 (S.D. Ohio 2011) (Beckwith, J.) (citing *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 44–46 (1989)).[3] Accordingly, "Ohio law prevents the recovery of purely economic losses in a negligence action … where recovery of such damages is not based upon a tort duty independent of contractually created duties." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (citing *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 2005-Ohio-5409, ¶¶ 6, 10). "However, if the economic loss arises from a personal injury or property damage caused by a party's negligence, then that loss is recoverable in tort." *Middleton*, 804 F. Supp. 2d at 639–40 (citing *Chemtrol* at 45).

Here, Mr. Muhammad alleges that PNC's negligence caused him to suffer "losses as he could no longer operate his business account" and "mental injuries not limited to emotional distress and mental anguish." (Compl., PAGEID # 22–23.) But Mr. Muhammad was a PNC customer and thus had a contractual relationship with PNC. And he does not allege that his economic losses were caused by any personal injury or damage to property, nor does he identify any tort duty owed by PNC independent of contractually created obligations. Therefore, the economic loss

---

[3] "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). Where the parties apply Ohio law without dispute, the Court will do the same.

doctrine bars his recovery of those damages. *See Middleton*, 804 F. Supp. 2d at 640; *see also Dooley v. Wells Fargo Bank, Nat. Ass'n*, 941 F. Supp. 2d 862, 867 (S.D. Ohio 2013).

With respect to Mr. Muhammad's claim of emotional damages, Ohio law "limits recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person." *Lawyers Coop. Publishing Co. v. Muething*, 65 Ohio St.3d 273, 280 (1992). His claim of emotional harm falls into neither category, so he may not proceed with his negligent infliction of emotional distress claim. *See Middleton*, 804 F. Supp. at 640; *Foster v. Health Recovery Services, Inc.*, 493 F. Supp. 3d 622, 638 (S.D. Ohio 2020) (Marbley, J.).

Mr. Muhammad's negligence claim is **DISMISSED**.

### D.    Mr. Muhammad's intentional infliction of emotional distress claim fails.

Mr. Muhammad's Complaint states that he is bringing a claim for "intentional of emotional distress", which the Court construes as a state-law claim for intentional infliction of emotional distress. (Compl., PAGEID # 21.) An IIED claim requires proving:

> (1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

7

*Ondo v. City of Cleveland*, 795 F.3d 597, 611–12 (6th Cir. 2015) (quoting *Burkes v. Stidham*, 668 N.E.2d 982, 989 (Ohio Ct. App. Nov. 13, 1995)). The "extreme and outrageous" standard is narrowly defined and is difficult to meet. *Id.* at 612.

The allegations set forth in the Complaint, even if true, cannot sustain a claim for IIED. Even accepting as true his allegation that he suffered mental harm, Mr. Muhammad does not allege serious mental anguish of a nature no reasonable person could be expected to endure. (Compl., PAGEID # 23.) Further, the conduct alleged—refusing to open an investigation and cutting up his debit card—does not clear the high bar for "extreme and outrageous" conduct. These actions are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," as required under Ohio law. *Yeager v. Loc. Union 20, Teamsters*, 6 Ohio St. 3d 369, 374–75, (1983) (internal quotations omitted) (quoting Restatement (Second) of Torts § 46 cmt. D (1965)).

Mr. Muhammad's IIED claim is **DISMISSED**.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** PNC's Motion (ECF No. 7) and **DISMISSES** Mr. Muhammad's claims. Mr. Muhammad's Motion for Partial Summary Judgment (ECF No. 21) is **DENIED as moot**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE
UNITED STATES DISTRICT COURT**